GRIFFIS, P.J.,
for the Court:
MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. This case is before the Court on a motion for rehearing. The motion for rehearing is granted. The original opinion is withdrawn and substituted with this opinion.
*801 ¶ 2. Ace Pipe Cleaning Inc. commenced this action for payment for services provided on a public construction project. The circuit court granted summary judgment in favor of the general contractor and the bonding company and found that the contract was void and unenforceable, under Mississippi Code Annotated section 31 — 3— 15 (Rev.2010), because Ace did not have a certificate of responsibility. In this appeal, Ace argues that the circuit court was in error to grant the summary judgment based on section 31-3-15, to not allow Ace’s equitable claim for quantum merit, and to allow the surety the same rights as the general contractor.
¶ 3. After the original opinion was issued, the Mississippi Supreme Court decided Ground Control, LLC v. Ccupsco Industries Inc., 120 So.3d 365, 371 (¶ 13) (Miss.2013). The court held that a subcontractor may recover on a quantum meruit theory even though the underlying contract is void because the sub-contractor failed to obtain a certificate of responsibility. Accordingly, finding reversible error, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.
FACTS
¶ 4. West Rankin Utility Authority awarded a public contract to Hemphill Construction Company Inc. to install 30,-000 feet of sewer pipe. The project was divided into six parts: (1) clean segments of the sewer main; (2) control flow in segments of the sewer main; (3) perform point repairs as directed; (4) install slip lining in segments of the sewer main; (5) rehabilitate manholes; and (6) provide a television inspection of the rehabilitated sewer and manholes.
¶ 5. On October 31, 2008, Hemphill and Ace entered a subcontract. Ace agreed to perform a portion of the work on the project in exchange for the payment of $464,718.50. Ace was to clean the pipes and perform the television inspection of the pipe after it was cleaned. Ace did not have a certificate of responsibility when it submitted its bid or when it entered into the subcontract.
¶ 6. Ace began work on the project on or about November 3, 2008. On December 31, 2009, Ace stopped work due to Hemphill’s failure to pay.
¶ 7. In the complaint, Ace asserted claims against Hemphill for breach of contract, for failure to pay Ace $266,312.18 under the parties’ subcontract, and for quantum meruit, seeking $266,312.18 for the reasonable value of services Ace had provided to the project for which it had not been compensated. The complaint also asserted a claim against Federal Insurance Company on the payment bond that it issued on the project, due to Hemphill’s failure to pay Ace for services rendered pursuant to the subcontract.
¶ 8. On September 8, 2011, Hemphill and Federal filed a motion to dismiss or, alternatively, for summary judgment. They argued that Ace had violated Mississippi Code Annotated section 31-3-15 because it did not obtain a certificate of responsibility from the Mississippi State Board of Contractors. As a result, they argued that the subcontract was void, and the statute also barred Ace’s quantum meruit claim. They also argued that the payment-bond claim failed because a surety holds the same rights and defenses as the contractors they insure.
¶ 9. Ace responded that the subcontract was not void because the pipe-cleaning work did not qualify Ace as a contractor and, as a result, Ace did not need a certificate under section 31-3-15. Ace also argued that Hemphill knew that Ace did not have a certificate and did not raise the *802 issue until after Hemphill accepted the benefits of Ace’s services. Ace also argued that section 31-3-15 did not foreclose its equitable claim for quantum meruit. Finally, Ace claimed that Federal was not entitled to summary judgment for the same reasons Hemphill was not.
¶ 10. On March 1, 2012, the circuit court entered an order that granted Hemphill and Federal summary judgment. The circuit court held that Ace was required to have a certificate of responsibility and, because it did not, the subcontract was void. The circuit court also held the quantum meruit claim was barred by section 31-3-15. The circuit court concluded that Ace’s claim against Federal was invalid because its claim against Hemphill was invalid. It is from this judgment that Ace now appeals.
STANDARD OF REVIEW
¶ 11. When this Court reviews a “grant of summary judgment, [we] employ[ ] a de novo standard of review.” United Plumbing & Heating Co. v. AmSouth Bank, 30 So.3d 343, 345 (¶4) (Miss.Ct.App.2009). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” M.R.C.P. 56(c).
¶ 12. We consider “all of the evidence before the [trial] court in the light most favorable to the non-moving party.” United Plumbing, 30 So.3d at 345 (¶ 4). The party that opposes the motion “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56 rule, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). Summary judgment must be entered if the non-movant does not sufficiently show “the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.” United Plumbing, 30 So.3d at 345 (¶ 5) (quoting Galloway v. Travelers Ins. Co., 515 So.2d 678, 683 (Miss.1987)).
ANALYSIS

I. Whether the subcontract was void under section 31-3-15.

¶ 13. Mississippi Code Annotated section 31-3-15 provides:
No contract for public or private projects shall be issued or awarded to any contractor who did not have a current certificate of responsibility issued by [the State Board of Public Contractors] at the time of the submission of the bid, or a similar certificate issued by a similar board of another state which recognizes certificates issued by said board. Any contract issued or awarded in violation of this section shall be null and void.
(Emphasis added).
¶ 14. Here, the question is whether Ace is to be considered a “contractor” that was required to have a “current certificate of responsibility.” Mississippi Code Annotated section 31-3-1 (Rev.2010) defines a contractor as “[a]ny person contracting or undertaking as prime contractor, subcontractor or sub-subcontractor of any tier to do any erection, building, construction, reconstruction, repair, maintenance or related work on any public or private project....”
¶ 15. Ace argues that it is not required to have a certificate of responsibility under the plain language of the statute. Ace claims that its work under the subcontract was limited to pipe cleaning, and this is not *803 identified in the definition of “contractor” under section 31-8-1.
¶ 16. Hemphill claims that Ace was required to have a certificate of responsibility. Hemphill argues that the State Board of Public Contractors “shall have the power and responsibility to classify the kind or kinds of works or projects that a contractor is qualified and entitled to perform under the certificate of responsibility issued to him. Such classification shall be specified in the certificate of responsibility.” Miss.Code Ann. § 31-3-13(g) (Rev. 2010).
¶ 17. The Board, pursuant to this authority, issued the following rules and regulations:
12. The Board will classify each applicant and issue a Certificate of Responsibility for the type or types of contracts on which he may bid on the following basis:
A. The applicant will not be classified or permitted to bid on or perform a type or types of work not included in his request.
B. The applicant shall state on the application the classification of work he desires to perform and contract, such classification to be selected and determined from the following list of major classifications:
(1) Building Construction
(2) Highway, Street and Bridge Construction
(3) Heavy Construction
(4) Municipal and Public Works Construction
(5) Electrical Work
(6) Mechanical Work
(7) SPECIALTY — A contractor performing work other than in the above major classifications must qualify as a specialty contractor.
Mississippi State Board of Contractors Statement of Experience Personnel and Equipment (Emphasis added).
¶ 18. Hemphill makes three arguments. First, Hemphill claims that Ace could have applied for a certificate of responsibility under the classifications of either “Municipal and Public Works Construction” or “specialty contractor.” Second, Hemphill argues that, in addition to the pipe-cleaning work, Ace performed a closed-circuit-television inspection, i.e., “T.V. inspection,” of the sewer lines. Hemphill contends that the Board of Contractors specifically lists “T.V. [I]nspection of Sewer Lines & Rehabilitation” as a specialty classification. Third, Hemphill argues that the owner, West Rankin Utility Authority, required that all contractors submitting a proposal on the project possess a current certificate of responsibility with the classification for the type of work they contracted to perform. The project’s “Contract Documents and Specifications,” which were incorporated into the subcontract, provided:
All Proposals submitted in excess of $50,000 shall contain[,] on the outside envelope of such bid, the Contractor’s current Certificate of Responsibility Number issued by the Mississippi [S]tate Board of Public Contractors. Prior to filing Proposals on public projects (in excess of $50,000), the prospective Bidder must obtain a Certificate of Responsibility from the Mississippi State Board of Public Contractors establishing his classification as to the value and type of construction on which he is authorized to bid.
¶ 19. We reject Ace’s argument that the plain language of section 31-3-1 does not require Ace to have a certificate of responsibility. Indeed, cleaning is not part of the definition of contractor under section 31-3-1. However, the statute defines tasks that are covered in general and broad *804 categories, i.e., “any erection, building, construction, reconstruction, repair, maintenance or related work on any public ... project.” Miss.Code Ann. § 31-3-1. We find that the task of pipe cleaning could be encompassed under one of the listed tasks, i.e., “reconstruction, repair, maintenance or related work.” Id.
¶ 20. There are other authorities that provide guidance to determine whether pipe cleaning services, similar to those performed by Ace, were beyond the scope of section 31-3-15.
¶ 21. In Clancy’s Lawn Care & Landscaping, Inc. v. Mississippi State Board of Contractors, 707 So.2d 1080, 1081-82 (¶¶ 4-7) (Miss.1998), the Board considered whether “pruning, mulching, weeding, fertilizing, insecticide and fungicide treatment, plant replacement, mowing, trimming, and litter removal” required a certificate of responsibility. The Board concluded that if fifty percent of the total cost of the project constitutes a job that does not require a certificate of responsibility, then a certificate of responsibility is not needed. Id. at 1082 (¶ 7). The supreme court said that the Board had the authority to decide “that mowing and/or litter removal contracts do not require a certificate of responsibility.” Id. at 1085 (¶19).
¶ 22. In Wastewater Plant Service Co. v. Harrison County Utility Authority, 28 So.3d 686, 693 (¶ 27) (Miss.Ct.App.2010), this Court considered what types of activities required a certificate of responsibility. This Court held that a certificate of responsibility was not required to manage and operate a wastewater facility and interceptor system. Id. We noted that the maintenance of the facility was not the major component of the project. Id. Also, we concluded that the contract was not for an activity that would normally require a certificate of responsibility like building or constructing. Id.
¶ 23. The Attorney General has issued several opinions on this very issue. The Attorney General has concluded “that maintenance of the beach as described is analogous to janitorial work in a building and does not require a certificate of responsibility.” Miss. Att’y Gen. Op., 2001-0663, 2001 WL 1513805, Meadows (Oct. 26, 2001). The Attorney General has also concluded that the removal of damaged limbs from trees on public property does not meet the definition of a public project. Miss. Att’y Gen. Op., 1999-0185, 1999 WL 325652, Bowman (Apr. 30, 1999). Thus, a tree surgeon that removes those limbs is not considered a contractor and does not need a certificate of responsibility. Id. Finally, the Attorney General has opined that a municipality need not comply with public-construction statutes when it enters into a contract to operate or maintain a water system, but must abide by the public-construction laws if it extends or makes capital improvements. Miss. Att’y Gen. Op., 2000-0673, 2000 WL 1899949, Snyder (Nov. 27, 2000).
¶ 24. We note that Ace’s work under the subcontract included the TV inspection of the sewer lines. Hemphill correctly argues that the Board specifically lists “T.V. inspection of Sewer Lines & Rehabilitation” as a specialty classification. For this portion of the work, it may not be argued that a certificate of responsibility was required. However, approximately eighty-one percent of the total subcontract cost was for pipe-cleaning services, not TV inspection. Because fifty percent of the total cost of the project constitutes a job that does not require a certificate of responsibility (i.e., TV inspection), a certificate of responsibility is not needed. Clancy’s Lawn Care, 707 So.2d at 1082, 1085 (¶¶ 7, 19). As a result, this case will be *805 decided on whether the pipe-cleaning services required a certificate of responsibility.
¶25. The purpose of the subcontract was to clean the sewer pipes to prepare for the slip-lining project. This work was not performed to maintain or operate the sewer lines. Instead, the pipe cleaning was a necessary part of the “reconstruction, repair, maintenance or related work on [the] public” project. Miss.Code Ann. § 31-3-1. For this reason, we conclude that Ace was required to have a certificate of responsibility. As a result, consistent with our decision in United Plumbing, 30 So.3d at 347 (¶ 11), we must find that the subcontract between Ace and Hemphill was void because Ace did not have the required certificate of responsibility. As a result, any obligations under the contract, including payment, were also void. Id. For these reasons, we find that the circuit court was not in error in granting summary judgment on Ace’s breach-of-contract claim.

II. Whether Hemphill and Federal are estopped from arguing the subcontract was void.

¶26. Next, Ace argues that Hemphill cannot declare the contract void where it had full knowledge of Ace’s alleged non-compliance, but still accepted the benefits of Ace’s services. Ace cites authority from other states that have held that a party cannot assert a contractor’s lack of licensing as a defense to a breach-of-contract claim if the party knew full well the contractor was unlicensed. See, e.g., Linsenmeyer v. Jackson, 2 Ariz.App. 575, 410 P.2d 693, 696 (1966); Kirkendall v. Heckinger, 105 Mich.App. 621, 307 N.W.2d 699, 703 (1981); Day v. W. Coast Holdings, Inc., 101 Nev. 260, 699 P.2d 1067, 1071 (1985).
¶ 27. Ace claims that Mississippi courts have yet to announce whether a party can be equitably barred from asserting a contract is void pursuant to section 31-3-15. The Mississippi Supreme Court has held:
[Wjhere one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith. A party cannot claim benefits under a transaction or instrument and at the same time repudiate its obligations.
Wood Naval Stores Export Ass’n v. Latimer, 220 Miss. 652, 664, 71 So.2d 425, 430 (1954).
¶ 28. Here, the subcontract was void. Hemphill did not have the right to accept or reject the transaction, because the subcontract was void and unlawful under the statute. As such, the doctrine of quasi-estoppel does not apply. Accordingly, we find that the circuit court was not in error in granting summary judgment and not allowing Ace’s claims to proceed on estop-pel grounds.

III. Whether Ace has a valid claim for quantum meruit.

¶ 29. Ace also asserted a claim for quantum meruit. Quantum meruit is “a contract remedy which may be premised either on express or ‘implied’ contract, and a prerequisite to establishing grounds for quantum meruit recovery is [the] claimant’s reasonable expectation of compensation.” In re Estate of Fitzner, 881 So.2d 164, 173 (¶25) (Miss.2003) (citations omitted). The elements are:
(1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such cir *806 cumstances as reasonably notified [the] person sought to be charged that [the] plaintiff, in performing such services, was expected to be paid by [the] person sought to be charged.
Id. at 173-74 (¶ 25) (citation omitted). Quantum meruit:
applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.
Id. at 174 (¶ 25) (internal citations omitted).
¶ 30. In Ground Control, the supreme court found that public policy did not support the denial of recovery in quantum meruit when a subcontractor performed a valuable service under a contract that was later found to be void because the subcontractor failed to obtain a certificate of responsibility, required by Mississippi Code Annotated section 31-3-15. Ground Control, 120 So.3d at 368-370 (¶¶ 8-12). The court reasoned the public policy behind requiring a certificate of responsibility was to protect the public from improper construction, and this public policy was adequately protected by the statute’s provisions for fines and penalties. Id. at 368 (¶8).
¶ 31. In Ground Control, neither party obtained a certificate of responsibility. Id. at 368 (¶ 9). With both of the parties guilty of “willful misconduct” in contracting, the court reasoned it was inequitable to penalize only one party by not allowing relief under quantum meruit. Id. at 369 (¶ 11). This case is factually different in that Hemphill had a certificate of responsibility. Although Hemphill cannot be guilty of any “willful misconduct,” Ace argues that it performed in good faith under the void contract and conveyed performance worth $266,312.18 to Hemphill.
¶ 32. Although we have found that Hemphill had no right to accept the transaction and subcontract, the supreme court reasoned in Ground Control that the public policy of section 31-3-15 is protected by its provisions for fines and penalties. Ground Control, 120 So.3d at 368 (¶ 8). Where the subject matter of the contract is perfectly legal but it is void for a reason having nothing to do with “moral turpitude,” such a contract is fundamentally different from cases that involve illegal or immoral contracts that violate penal statutes, such as those for illegal drugs or gambling. Id. at 369 (¶¶ 10-11). Here, there is nothing in the record that suggests Ace sought any gain by its failure to secure a certificate of responsibility. In fact, Ace argued that Hemphill should have told it of the need for a certificate of responsibility.
¶ 33. Therefore, as in Ground Control, a subcontractor without a certificate of responsibility may recover under a theory of quantum meruit. Accordingly, we reverse the summary judgment entered and remand this case for consideration of Ace’s quantum meruit claim. We do not address the validity of any defense Hemphill asserted, including, but not limited to, its contention that Ace’s performance under the void contract was deficient or that the conveyed monetary benefit to Hemphill was less than Ace claimed.

IV. Whether it was error to grant summary judgment in favor of Federal.

¶ 34. The Mississippi Supreme Court has held that “[t]he surety’s liability and obligation are the same as the principal’s, *807 and the surety is liable only if the principal is liable.” Fid. & Guar. Ins. Co. v. Blount, 63 So.3d 453, 460 (¶ 29) (Miss.2011). Our holding today is only that Ace may rely on the theory of quantum meruit to recover the value of benefit it conveyed to Hemp-hill when performing under the void contract. Upon remand, Federal, like Hemp-hill, may rely upon any other defense in law or fact that it has pled and can establish through proof.
¶ 35. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPEL-LEES.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.